Argued and submitted November 10, 1986, reversed and remanded for reconsideration
August 5, 1987

# BIRD,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
*Respondents.*

## (86-AB-550; CA A40215)

740 P2d 243

Martha C. Evans, Eugene, argued the cause for petitioner. With her on the brief was Leistner, Vallerand & Evans, Eugene.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Weyerhaeuser Co., Inc.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Petitioner seeks judicial review of an Employment Appeals Board order which affirmed an order of a referee denying her unemployment compensation benefits on the ground that she voluntarily left work without good cause. We remand for reconsideration.

Petitioner worked for Weyerhaeuser from 1972 until September 5, 1985. Since 1977, she had worked full time as a second fire tender and was the only female employe at the power plant. Petitioner testified at the hearing before the referee that she was subject to numerous incidents of harassment during the time that she worked for Weyerhaeuser and that the one which occurred on the day she quit was "the final strife." According to petitioner, on the morning of September 5, 1985, when she had just gone off shift and was washing her hair in the restroom, one of her co-workers lit a firecracker and tossed it under the restroom door. It exploded four inches from her feet. The co-worker then tossed another lit firecracker against the outside wall of the restroom, but it failed to explode. One of her co-workers told her "Oh, don't be upset. We were just joking." Petitioner testified that she did not talk to her supervisor about it; she did not think it would do any good, because she had filed a number of grievances without result.

Petitioner did not return to work after the firecracker incident. On September 24, 1985, Weyerhaeuser fired her. She asked for her job back but was denied reinstatement. In addition to describing the firecracker incident, she testified at the hearing that the manager of her department, Bethune, had once told her that he had been looking for a cause to fire her. She stated that he had previously harassed her in other ways, such as refusing to do anything when co-workers walked in on her while she was using the rest room, or when a crew leader tried to get the windows to that rest room changed in a way that would allow people to see in. She also testified that she was accused wrongly of sexual involvement on the job with another employe. She believed that her legitimate complaints were ignored.

The referee concluded that petitioner had voluntarily left work without good cause and was ineligible for benefits, because

"the events that caused the claimant to leave employment were simply not matters of such gravity that they would have caused a reasonable and prudent person of normal sensitivity[1] to leave full-time work which paid $11.73 per hour and become unemployed."[2]

The referee's order was adopted by EAB, which noted:

"In reaching this result we would point out that the claimant had a reasonable alternative to quitting—complaining to the employer about the conduct of her fellow employees."

■ Petitioner argues that EAB erred in finding that she did not have good cause to leave work, because it did not address her contention that she left due to a continuing course of harassment. We agree. She argues that she left work because of a series of incidents, including the most recent firecracker harassment. EAB did not make findings as to whether the incidents of harassment occurred and, if so, whether that harassment was "good cause" for leaving work. As we said in *Middleton v. Fred Meyer, Inc.,* 79 Or App 443, 446, 719 P2d 73 (1986):

"The referee and EAB did not address petitioner's main contention that her * * * harassment * * * constituted 'good cause' to leave work. Petitioner presented evidence on that issue, and the failure or EAB to address it requires that we reverse and remand for reconsideration." (Citation omitted)

■ EAB concluded that petitioner had a reasonable alternative to quitting after the firecracker incident, because she could have complained to her supervisor:

"In that the claimant had recently received an apology for one

---

[1] OAR 471-30-038(4) provides that "good cause" for leaving work is

"[s]uch that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work."

[2] ORS 657.176(2)(c) provides:

"An individual shall be disqualified from the receipt of benefits until the individual has performed service in employment subject to this chapter * * * for which remuneration is received which equals or exceeds four times the individual's weekly benefit amount subsequent to the week in which the act causing the disqualification occurred, if the authorized representative designated by the assistant director finds that the individual:

"* * * * *

"(c) Voluntarily left work without good cause[.]"

incident after such a complaint, it would appear that she could have gone to the employer again. This would not have been futile considering the recent apology."

Petitioner argues that EAB's conclusion is not supported by substantial evidence. Petitioner is correct. The only evidence of an "apology" was the comment by her co-workers that the firecracker incident was just a joke. There is no evidence that that was the result of a complaint by petitioner to her employer, and it does not constitute substantial evidence that petitioner's complaint to her supervisor would have been effective.

■ Petitioner also argues that EAB should have made credibility findings. We agree. *See de St. Germain v. Employment Division,* 74 Or App 484, 703 P2d 986 (1985). The referee made no such findings, and credibility was an issue. Portions of petitioner's story were contradicted by her co-workers, and other parts, although uncontradicted, were supported by no evidence other than her own testimony.

■ Next, petitioner argues that EAB's conclusion that she was not acting reasonably in quitting her job with Weyerhaeuser was contrary to law, because the referee based his decision solely on economic considerations. Petitioner is correct that an employe's decision need not be dictated solely by economic matters. As stated in *McPherson v. Employment Division,* 285 Or 541, 557, 591 P2d 1381 (1979):

"The workplace is the setting of much of the worker's daily life. The statute does not demand as a matter of law that he or she sacrifice all other than economic objectives and, for instance, endure racial, ethnic, or sexual slurs or personal abuse, for fear that abandoning an oppressive situation will disqualify the worker from unemployment benefits."

However, in the present case, EAB did not limit its consideration solely to the economics of what petitioner did.

■ Finally, petitioner contends that EAB erred in failing to remand to allow petitioner an opportunity to present additional facts to support her case. We agree. The referee refused to allow her to introduce a logbook or journal which she said contained evidence of several instances of harassment and of her efforts to complain to her superiors. To the extent that that evidence was relevant to her contention that she had

suffered ongoing harassment and to her contention that complaining after the firecracker incident would have been futile because previous complaints had been fruitless, it should have been admitted.

Reversed and remanded for reconsideration.